# Lingenfelter *versus* Riddlesburg Coal and Iron Co. King's Executor *et al. versus* Same.

A motion was made for a new trial in an action of ejectment on the ground that the verdict was irregularly recorded, and at the suggestion of the court an order was agreed upon by both parties to the action whereby the record was amended and the verdict permitted to stand without prejudice to the question of mesne profits, which was the subject of controversy. Subsequently, a difficulty arising about the construction to be given to this order, the court made another order, explanatory of the first, and directing that if the terms of the second order were not accepted that the motion for a new trial should be reinstated. The plaintiff refused, whereupon the court made absolute the original motion for a new trial. *Held,* that this action of the court was not erroneous.

May 17th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Bedford county :* Of May Term 1877, No. 64 and 65.

These were two actions of ejectment with notice of claim for mesne profits, the one brought by Jacob Lingenfelter against the Riddlesburg Coal and Iron Company and the Kemble Iron Com-

[Lingenfelter *v.* Riddlesburg Coal & Iron Co.]

pany, and the other by Alexander King's Executor and Jacob Lingenfelter against the same defendants.

The first case was tried in December 1875, and on the 18th of that month a verdict was rendered for the plaintiffs and the damages were assessed at $3811.60. Defendants moved for a new trial which the court laid over to await the verdict in the second case. This second case was called for trial on the 24th of April 1876, and on the 2d of May following a sealed verdict was rendered, " For the plaintiffs for the land in dispute, and we assess the damages at twelve cents per ton for coal and fifty cents per tree." This verdict the court ordered the prothonotary to record as follows, " For plaintiffs for the land in dispute."

The plaintiffs moved the court for a rule on defendants to show cause why the verdict should not be amended according to the sealed verdict of jury, by assessing damages or mesne profits, at twelve cents per ton for coal and fifty cents per tree; and should this motion be denied, then they moved for a new trial, because no damages were allowed by the verdict as recorded.

Subsequently plaintiffs moved the court for leave "to withdraw so much of said motion as requests the court to grant them a new trial," and followed this with a petition asking leave to amend the record " so that the subject of mesne profits might be entirely omitted from the same." The court refused this petition, but gave leave to plaintiffs, if they so desired it, " to file a motion in ordinary form to strike out all claims for mesne profits, so that the issue can be tried hereafter on a separate issue after adjudication of the title." The court made no disposition of the motion to withdraw the motion for a new trial. On the same day—the 12th of July 1876, which was the last day of the term—the motions for new trials in both cases were argued, and the following order made by the court:—

" The motions for new trials are refused on the following terms and conditions, to be accepted by the counsel—acceptance to be indicated by signing this paper. The record is amended in both the cases so as to strike out all that relates to mesne profits and damages, and the verdicts are to stand for the plaintiffs for the land in dispute. The question of damages is to be settled hereafter in a separate action or actions for mesne profits, to be brought at any time and tried after the final adjudication of the title to the land; plaintiffs not to be prejudiced by lapse of time from this date on the question of mesne profits."

The counsel of both plaintiffs and defendants accepted and signed these terms, and they were filed of record.

A controversy subsequently arising about the construction to be given them, the defendants filed a petition which set forth:—

" That at the time said order was made and accepted, it was the understanding of the counsel of the defendants, as well as of the

[Lingenfelter *v.* Riddlesburg Coal & Iron Co.]

court, and, as your petitioners believe, of the counsel of the plaintiffs, that if, upon final adjudication of the title to the lands in dispute, it should be determined that the title to said lands is in the defendants (the Riddlesburg Coal and Iron Company), the plaintiffs were not to demand or claim mesne profits, and any action or actions that they might institute for mesne profits should be discontinued, and that that is the construction which the court intended should be put upon said order; and further, that the counsel for plaintiffs now insist upon an entirely different construction of said order, and claim that the plaintiffs have the right to recover mesne profits, even if the defendants should obtain two verdicts and judgments in ejectment for the land—a construction utterly at variance with that which was intended by the court, and your petitioners are apprehensive that great wrong and injustice may result to them if the construction of said order contended for by the plaintiffs' counsel should prevail. They therefore pray the court to take such action in the premises as will effect and carry out the intentions of the court and the understanding of the counsel of the parties at the time the order aforesaid was made.''

Whereupon the court, on the 26th of September 1876, made the following order :—

'' The order of the court of 12th of July, refusing the motions for new trials, and amending the record by striking out all relating to mesne profits, in both cases, was made with the design to eliminate from both cases all that related to mesne profits, and allow the title to the land to be first settled by two verdicts and judgments in ejectment, and thereafter Lingenfelter's claim to damages, provided he ultimately recovered the land. It was not the intention that Lingenfelter should recover any mesne profits whatever, if the title to the land was ultimately settled to be in the defendants. The oral explanation of the court before the order was made was full and explicit, and, as the court understood it, the contemplated action of the court was accepted and concurred in by the counsel on both sides.

'' If the order of court, as reduced to writing, will admit of any other construction, it is an error and must be corrected. It is hereby supplemented by this writing, intended to make plain its meaning (if, indeed, there can be any doubt in regard thereto), to be accepted by the counsel on both sides by appending their signatures hereto.

'' If not so accepted, the said order of the court is hereby revoked, and the motions for new trials are reinstated on the argument list, with the like effect as if no such order had been made.''

The defendants accepted this order, but the plaintiffs refused, and thereupon the court reversed the order of the 12th of July 1876, and reinstated the motions for new trials, which were granted

[Lingenfelter v. Riddlesburg Coal & Iron Co.]

on October 11th 1876. The granting of these new trials was the error assigned by plaintiffs, who took these writs.

*John Cessna*, for plaintiffs in error.—After the expiration of the term, and after judgment entered, the discretion of the court in opening or granting new trials no longer exists. The day of discretion has passed, and any action of the court after that time is an excess of power and may be reversed by this court: Catlin v. Robinson, 2 Watts 377 ; Ullery v. Clark, 6 Harris 148 ; Banning v. Taylor, 12 Id. 289 ; Mathers v. Patterson, 9 Casey 485 ; Sheldon v. Stryker, 42 Barb. 285 ; Wells v. Melville, 25 Texas 337 ; Hilliard on New Trials 112.

*Russell & Longenecker, George A. Smith* and *W. H. Koontz*, for defendants in error.—Granting or refusing a new trial is a matter within the sound discretion of the judge who tried the cause : 3 Bl. Com. 388 ; Buller N. P. 326 ; Chitty's General Pract., vol. 4, p. 87 ; Ross et al. v. Eason, 1 Yeates 14 ; Emmet v. Robinson et al., 2 Id. 514 ; Vanlear v. Vanlear, 4 Id. 3 ; Swearingen v. Birch, Id. 322 ; Pringle et al. v. Gaw, 6 S. & R. 298 ; Willing et al. v. Birch, Id. 457 ; Flemming v. The Marine Ins. Co., 4 Whart. 59. In granting new trials the court knows no limitations, except in some particular cases, but will grant a new trial where it tends to the advancement of justice : Steinmetz et al. v. Curry, 1 Dallas 234 ; Cowperthwaite v. Jones, 2 Id. 56 ; Jordan v. Meredith, 3 Yeates 318 ; Commonwealth v. Eberle, 3 S. & R. 9. And it is within the power of the court to impose terms : Devinney v. Reeder, 1 P. & W. 400 ; Welsh v. Dusar, 3 Binn. 329 ; Kuhn v. North, 10 S. & R. 411.

The judgment of the Supreme Court was entered, May 28th 1877,

PER CURIAM.—In consequence of a sealed verdict being rendered by the jury which was not sufficiently full, and of the manner in which the verdict was recorded, difficulties sprang up which led to several motions, and among them a motion for a new trial by the plaintiffs, and then a motion to withdraw that motion. On the argument of these motions on the 12th of July, the last day of the term and last sitting of the court, much discussion took place, in which the court participated. The account of the plaintiffs in error is, that after defendants' attorney had concluded his argument, the "court began to intimate opinions, saying if the defendants did not agree to so and so, new trials would be refused, and if plaintiffs did not consent to this and that, new trials would be granted. Before the attorney for plaintiffs had fairly commenced his reply, the court stated the substance of the agreement

[Lingenfelter *v.* Riddlesburg Coal & Iron Co.]

of that date, and the plaintiffs at once accepted." After consultation, the defendants also accepted, and the court reduced the agreement to writing. The judge says, in his amendment of September 26th 1876, that the "oral explanation of the court before the order was made was full and explicit, and, as the court understood it, the contemplated action of the court was accepted and concurred in by the counsel on both sides. If the order of the court as reduced to writing will admit of any other construction, it is an error and must be corrected." The court accordingly stated in writing the agreement as proposed by it and accepted, to stand as an amendment of the former writing, and, to prevent all complaint of injustice, ordered it to be presented for acceptance by the counsel, and if not accepted, then ordered a new trial. It was not accepted, and after a full time allowed, viz., on the 11th of October, a new trial was granted.

Thus the undeniable history of the case makes it plain that the ordinary course of trial by jury was interrupted by the act of the court itself, which at that instant had power to grant or refuse the pending motions, and that the judgment following the agreement was not an adversary judgment in due course of law, but was upon consent, and is to be likened rather to a confessed judgment. Being founded on the agreement, in one sense imposed by the court, it is plain that an error in the agreement ought to be corrected, and that no court, having the interests of justice in view, would suffer its own act to conclude the parties. It is perfectly evident that the agreement became immediately the subject of difference of opinion between the opposite counsel, for the motion to reform the judgment came on the first day of the next term, at the first opportunity. And that this difference of opinion is vital, is made manifest by the argument of the counsel of the plaintiffs in error, which attributed to the judge a want of knowledge, when the agreement was written, of the effect of a verdict in ejectment upon the right of the plaintiffs to recover mesne profits. The purpose of the judge was to defer the question of mesne profits until a final determination of the title, and then to make the recovery of any profits contingent on this question of title. Instead of this, the plaintiffs in error seek to make the judgment absolute as to the right to the mesne profits for the space intervening between the service of the writ and execution of the *habere facias possessionem,* which we do not doubt is contrary to the intention of the agreement of July 12th, though not expressed so as to save it from a decided difference of opinion on this point. The court was therefore right in amending the agreement, if agreed to, and if not, in setting it aside as contrary to its own intention when drawn up and offered for acceptance. Unless this power be admitted the grossest injustice might be done. Courts do not sit to catch parties in legal traps.

Proceeding affirmed in both cases.